Filed 8/7/26  In re Manny M. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Manny M., a Person Coming Under the Juvenile Court Law. | B349444 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 24CCJP03732A) |
| Plaintiff and Respondent, | |
| v. | |
| Virginia M. et al., | |
| Defendants and Respondents; | |
| Maria M., | |
| Intervener and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Kristen Byrdsong, Commissioner.  Affirmed in part and dismissed in part.

Law Offices of Vincent W. Davis & Associates and Vincent W. Davis for Intervener and Appellant.

Dawyn R. Harrison, County Counsel, Jacklyn K. Louis, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

_____

## INTRODUCTION

On appeal, maternal grandmother, Maria M., argues that the trial court erred by declining to place her grandchild, Manny M., in the care of the maternal grandparents in a Welfare and Institutions Code hearing under section 388.[1] We find no abuse of discretion in the trial court's ruling declining to disturb Manny M.'s placement with his paternal grandparents who cared for him throughout the dependency proceeding and who were declared his prospective adoptive parents.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Dependency proceedings

Manny M. was born in May 2022. At the outset of the dependency case, Manny M. was placed with his paternal grandparents when he was removed from his parents. On May 27, 2025, Manny M.'s maternal grandparents filed a motion under section 388 asking the trial court to order an Interstate Compact Placement of Children (ICPC) investigation with the goal of placing Manny M. with the maternal grandparents in Arizona.

As exhibits to the motion, the maternal grandparents attached: (1) a letter from a flight attendant who was a client and friend to the maternal grandmother attesting to her

_____

[1] All further statutory citations are to the Welfare and Institutions Code.

character and "loving heart"; (2) a letter from maternal grandmother's employer explaining her "dedication and commitment" to the job; (3) a letter from maternal grandfather's employer stating that he has "been very responsible, dependable, and a hard working man"; and (4) pictures of the maternal grandparents caring for Manny M. as a baby in various settings.

On May 28, 2025, the trial court ordered a section 388 hearing on the maternal grandparents' motion. On September 11, 2025, the trial court began the section 388 hearing, which it considered together with the pending permanency planning hearing under section 366.26. The maternal grandparents presented Walter M. (Father) and the maternal grandmother as witnesses in support of their motion.

Father testified that Manny M. previously lived with the maternal grandparents for two and one-half years, and they shared an attachment. He also noted that Manny M. was on the spectrum for autism and was diagnosed at three years old. He expressed concern that there was an "issue" with bonding with the paternal grandparents. Father also shared that the paternal grandparents had insufficient time to dedicate to Manny M. because they had custody over his other three children. He was also worried because Manny M. developed a rash behind his ear and sustained a bruise above one of his knees while under the paternal grandparents' care. Father noted that Manny M. had tantrums with the paternal grandparents, but did not have any when he lived with the maternal grandparents. In one instance, Manny M. hit his head on the ground and cut his lip.

Father further explained the maternal grandparents had successful FaceTime visits with Manny M. When asked to summarize why he wanted Manny M. placed with the maternal

grandparents, he said they shared a closer attachment, they had fewer kids to look after, Manny M. would have his own bedroom, and the maternal grandparents prepared more homecooked meals.

During cross-examination, Father conceded that Manny M. scratched, bit, and slammed his head while under the care of the maternal grandparents. He also said that the paternal grandparents were meeting all of the Manny M.'s needs.

The maternal grandmother also testified. She stated that at the beginning of the case, she asked for Manny M. to be placed with her because she would be able to provide a safe home for Manny M. She stated that Manny M. lived with her for two and one-half years and he had his own room. During that time, Manny M. was never injured. The maternal grandmother played with him, made him food, bathed him, and read books to him. She stated that she and Manny M. had a close relationship, and he hugged both her and the maternal grandfather when he saw them. Manny M. was also attentive during their 30- to 45-minute FaceTime visits.

The maternal grandmother said that Manny M. should live with her instead of the paternal grandparents because he lived with the maternal grandparents previously; he had a relationship with the maternal grandparents; the cold, California climate did not agree with Manny M.; Manny M. injured himself because of stress while in the paternal grandparents' care; and she loved Manny M. The maternal grandmother also stated that she and the maternal grandfather were of good moral character.

At the close of evidence, the maternal grandparents, Father, and Manny M.'s mother argued in favor of the maternal grandparents' section 388 motion. The maternal grandparents

did not reference section 361.3 in the hearing or in argument. Manny M.'s counsel and DCFS asked the court to deny the section 388 motion.

In denying the motion, the trial court found that Manny M.'s tantrums were not a change in circumstances, "It seems that he's interacting this way with everyone; sometimes it's positive and sometimes he has tantrums as father testified." The trial court similarly discounted Manny M.'s bruises from tantrums while in the paternal grandparents' care because Manny M. was prone to tantrums generally. The trial court did not find it was in Manny M.'s best interest to be moved to Arizona when he was doing well in the paternal grandparents' care. In summary, the trial court ruled, "So as both prongs have failed to be met, there's no change in circumstance, and it wouldn't be in [Manny M.'s] best interest."[2]

After terminating parental rights, the trial court found the paternal grandparents to be Manny M.'s prospective adoptive parents and found they expressed an interest in adopting Manny M.

---

[2] The record on appeal consists of the maternal grandparents' section 388 motion with its exhibits, the reporter's transcript of the combined section 388 and section 366.26 hearings, and related minute orders for the section 388 and section 366.26 hearings. Thus, our review is limited to the maternal grandmother's evidence because the trial court limited the maternal grandmother's access to those parts of the record to make this appeal. Even without the benefit of DCFS's evidence below, we conclude the appeal is without merit.

## DISCUSSION

On appeal, the maternal grandmother argues the trial court abused its discretion in denying the maternal grandparents' section 388 motion. We disagree and see no abuse of discretion in the trial court's decision to continue Manny M.'s successful placement with his paternal grandparents.

### 1.    Governing section 388 standards

Section 388 permits the juvenile court, "upon grounds of change of circumstance or new evidence, ... to change, modify, or set aside any order of court previously made." (§ 388, subd. (a)(1).) This statute allows an order to be modified only when a parent or other person with an interest in a dependent child establishes that (1) changed circumstances or new evidence exists; and (2) the proposed modification would promote the best interest of the child. (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1080.) "The change of circumstances or new evidence 'must be of such significant nature that it requires ... modification of the challenged prior order.'" (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.) "In assessing the best interests of the child, 'a primary consideration ... is the goal of assuring stability and continuity.'" (*Id.* at p. 616.) Furthermore, the petitioner "must make a prima facie showing of entitlement to relief in order to trigger the right to an evidentiary hearing on the petition." (*In re R.F.* (2023) 94 Cal.App.5th 718, 728.) " 'In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case.'" (*In re Damari Y.* (2023) 92 Cal.App.5th 699, 708.)

We review the trial court's ruling on a section 388 petition for abuse of discretion. (*In re Mia M.* (2022) 75 Cal.App.5th 792, 806.) " "Under this standard of review, we will not disturb the

decision of the [juvenile] court unless [it] exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination.' " (*In re R.M.* (2025) 111 Cal.App.5th 119, 137.)

## 2. The maternal grandmother fails to establish any abuse of discretion

The maternal grandmother makes four arguments on appeal in her opening brief. We address each one.

First, the maternal grandmother argues that the trial court erred in failing to set an evidentiary hearing under section 388. This argument fails because the trial court conducted an extensive evidentiary hearing with both documentary evidence and live testimony. As a result, there is no order denying the maternal grandparents' request for an evidentiary hearing. Because the maternal grandmother challenges a nonexistent order, her appeal to the order refusing to set an evidentiary hearing is dismissed. (See *People v. Burnham* (1961) 194 Cal.App.2d 836, 838 [appeal from nonexistent order denying motion for new trial dismissed].)

Second, to the extent that the maternal grandmother argues that the trial court abused its discretion in denying the section 388 motion on the merits, that argument also fails. (*In re R.M.*, *supra*, 111 Cal.App.5th at p. 137.) Here, while the maternal grandmother pointed to bruises and rashes on Manny M. to support her view that the paternal grandparents were not appropriately caring for Manny M., the trial court rejected that evidence. Instead, the trial court concluded that Manny M. would tantrum and harm himself in the care of both the paternal and maternal grandparents. Moreover, evidence at trial established that the paternal grandparents met Manny M.'s

needs, and they also cared for Manny M.'s siblings. Finally, the trial court declared the paternal grandparents to be Manny M.'s prospective adoptive parents during the section 366.26 hearing on the same day, establishing the paternal grandparents' plan to offer Manny M. permanence. In summary, the trial court was presented with evidence that both maternal grandparents and paternal grandparents sought to have Manny M. live with them and both had a history of caring for him. We find no abuse of discretion in the trial court's conclusion that Manny M. should remain in the care of his paternal grandparents who had met all of his needs while under court jurisdiction, and who the court named prospective adoptive parents. In assessing section 388 motion, " 'a primary consideration ... is the goal of assuring stability and continuity.' " (*In re Mickel O.*, *supra*, 197 Cal.App.4th at p. 616.) Here, that goal is served with continuing placement with the paternal grandparents.

Third, the maternal grandmother argues that the trial court erred in failing to place Manny M. with the maternal grandparents under section 361.3, which defines a relative preference and factors governing these hearings. (§361.3, subd. (a)(1)–(8).) Here, however, the maternal grandparents made no reference to section 361.3 in the evidentiary hearing or in argument, and they only made a single, passing reference to section 361.3 in their initial moving papers without any explanation or analysis. In the hearing itself, the maternal grandparents did not address section 361.3 at all. Rather, the maternal grandparents solely argued the matter under the legal standard for section 388, the "[m]aternal grandparents are asking that the 388 is granted." By failing to make any argument on section 361.3 at the evidentiary hearing below, the

maternal grandmother forfeited the issue.  (*In re R.Q.* (2023) 96 Cal.App.5th 462, 470.)

Fourth, the maternal grandmother argues that the trial court should have ordered an ICPC investigation into the maternal grandparents' home in Arizona to assess placement for Manny M.  However, this argument fails as the trial court concluded it was in Manny M.'s best interests to remain placed with his paternal grandparents.  We see no error in the trial court's decision to decline to order an ICPC investigation.

## DISPOSITION

The trial court's order denying the maternal grandparents' section 388 motion is affirmed in part and dismissed in part.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

SCHERB, J.

9